SARAH SHEA *et al.*

*v.*

THOMAS MURPHY *et al.*

*Filed at Ottawa January 19, 1897.*

1. EVIDENCE—*grantor's statements inadmissible to impeach his deed.* The statements of a grantor are inadmissible to invalidate his deed.

2. APPEALS AND ERRORS—*erroneous instructions will not reverse a decree when jury's verdict is advisory.* A decree sustained by the evidence will not be reversed for erroneous instructions where the verdict of the jury is merely advisory.

3. DEEDS—*influence, to be "undue," must deprive grantor of free agency.* To render a deed void for undue influence in its procurement, the influence exerted must have been such as to deprive the grantor of free agency.

4. SAME—*grantor's mental capacity not determined by age or bodily infirmity.* Where a grantor possesses sufficient mental capacity to properly understand the nature, character and scope of his deed, the same will not be set aside because his mind may have been somewhat impaired by age or disease.

5. SAME—*giving deed to third party for delivery to grantee after grantor's death is a good delivery.* Where a grantor executes a deed and places it in the control of a third party, to be delivered to the grantee after the grantor's death, reserving to himself no right to recall or revoke the same, such facts constitute a valid delivery.

APPEAL from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This was a bill brought by Sarah Shea, Elizabeth Crinigan, Mary A. Gibson and George A. Murphy, against Thomas Murphy and others, to partition certain lands in LaSalle county which originally were owned by Patrick Murphy, who died intestate December 10, 1893, leaving complainants and defendant Thomas Murphy his children and only heirs-at-law. The lands consisted of two hundred acres in LaSalle county and one hundred and sixty acres in Kansas. On the 14th day of October, 1893, Patrick Murphy executed a deed conveying the south half of the north-east quarter of section 31, township 35, range 1, in LaSalle county, to Thomas Murphy for life, with re-

mainder to his sons Thomas F. Murphy and William E. Murphy, and the north half of the south half of the north-west quarter of section 5, townhip 34, range 1, in LaSalle county, to Thomas Murphy for life, with remainder in fee to his two sons Timothy J. Murphy and George Murphy. On the same day Patrick Murphy executed certain other deeds, one conveying to Elizabeth Crinigan forty acres in LaSalle county for life, with the remainder in fee to the children of said Thomas Murphy; another conveying to Sarah Shea forty acres of land in LaSalle county for life, with remainder in fee to the children of George A. Murphy; another conveying to George A. Murphy and Mary A. Gibson one hundred and sixty acres of land in Kansas.

It was charged in the bill that Patrick Murphy, at the time said pretended deeds purport to have been executed, was not of sound mind and memory; that he was eighty-one years old and mentally incapable of transacting such business; that Thomas Murphy exercised undue arts and fraudulent practices, and resorted to falsehood and mis-representation, to induce said Patrick Murphy to execute said deeds, and that Patrick Murphy was under improper restraint and undue influence. It was also alleged that Patrick Murphy never delivered said deeds and never al-lowed them to go out of his control, and that he intended they should take effect only after his death, and that they are void under the Statute of Wills.

Thomas Murphy put in an answer to the bill, in which he admitted the death of Patrick Murphy, and heirship, as alleged in the bill, but denied that Patrick Murphy died seized of said real estate; averred that two months before his death he conveyed it to the defendant; denied that Patrick Murphy was not of sound mind, and denied that he ever used or exercised undue arts or fraudulent practices or resorted to misrepresentations to induce the execution of said deeds.

Upon application the court submitted to a jury the following issues of fact: First, was Patrick Murphy of

sound mind; second, were the deeds obtained by undue influence; third, were the deeds delivered; fourth, did Patrick Murphy intend that said deeds should take effect only after his death. The jury returned a verdict that Patrick Murphy was of sound mind, that the deeds were not obtained by undue influence, that they were delivered, and that Patrick Murphy did not intend that they should take effect until after his death. Upon a return of the verdict the court overruled a motion to set aside the verdict, and entered a decree dismissing the bill, to reverse which complainants have brought this appeal.

E. J. Kelly, and Brewer & Strawn, for appellants:

A deed takes effect at once, according to its terms, or not at all. *Cline* v. *Jones*, 111 Ill. 563; *Hayes* v. *Boylan*, 141 id. 400; *Bovee* v. *Hinde*, 135 id. 137; *Blackman* v. *Preston*, 123 id. 381; *Stewart* v. *Fellows*, 128 id. 480.

If it appears that the intention of the maker was that the deed should take effect only upon his death, it is testamentary in its character, and therefore inoperative. *Wellborn* v. *Weaver*, 17 Ga. 267; *Carleton* v. *Cameron*, 54 Tex. 72; *Turner* v. *Scott*, 51 Pa. St. 126; *Habergham* v. *Vincent*, 2 Ves. Jr. 204.

The intention of the maker may be ascertained not only from the instrument, but from extrinsic evidence. *Wellborn* v. *Weaver*, 17 Ga. 267; *Green* v. *Proude*, 1 Mod. 117; *Lyles* v. *Lyles*, 2 N. & McC. 531; *Ferguson* v. *Ferguson*, 27 Tex. 339; *Habergham* v. *Vincent*, 2 Ves. Jr. 204; *Shovers* v. *Warrick*, 152 Ill. 355; *Price* v. *Hudson*, 125 id. 284; *Cline* v. *Jones*, 111 id. 563.

Delivery may be by acts or words, or both; but what was said and done must clearly manifest the intention of the grantor that the deed shall at once take effect, and the grantor must lose all control over it. *Bovee* v. *Hinde*, 135 Ill. 137; *Provart* v. *Harris*, 150 id. 40; *Byars* v. *Spencer*, 101 id. 429; *Rountree* v. *Smith*, 152 id. 493; *Herbert* v. *Herbert*, Breese, 354; *Stewart* v. *Fellows*, 128 Ill. 480.

The delivery of a deed to a third person, to pass to the grantee on the grantor's death, reserving the right to recall it, is no delivery, even though never recalled. *Cook* v. *Brown*, 34 N. H. 460; *Prutsman* v. *Baker*, 30 Wis. 644; *Bailey* v. *Bailey*, 7 Jones, 44; *Brown* v. *Brown*, 66 Me. 316; *Fitch* v. *Bunch*, 30 Cal. 208; *Stinson* v. *Andersen*, 96 Ill. 373.

The right to recall the deed may exist, even though the grantor does not reserve it and does not exercise it. *Baker* v. *Haskell*, 47 N. H. 479; *Gilmore* v. *Whitesides*, 31 Am. Dec. 563.

Where a person enfeebled in mind by disease or old age is so placed as to be likely to be subject to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee. *Sands* v. *Sands*, 112 Ill. 225; *Haydock* v. *Haydock*, 34 N. J. Eq. 570; *Darlington's Appeal*, 86 Pa. St. 512; *Sears* v. *Shafer*, 6 N. Y. 268; *Boyd* v. *De la Montagnie*, 73 id. 502.

Transactions between parent and child will be set aside if there is the slightest evidence of imposition or unfairness. Bispham's Principles of Eq. sec. 235; 1 Jarman on Wills, (5th Am. ed.) 137, 138; *Garvin* v. *Williams*, 44 Mo. 465; *Jacox* v. *Jacox*, 40 Mich. 473; *Sands* v. *Sands*, 112 Ill. 225; *Tyler* v. *Gardiner*, 35 N. Y. 559.

VINCENT J. DUNCAN, THOMAS F. DOYLE, and WALTER A. PANNECK, for appellees:

Mental weakness which will justify a court of equity in setting aside a contract or deed must be such as renders the party incapable of understanding or protecting his own interests. *Lindsey* v. *Lindsey*, 50 Ill. 79; *Meeker* v. *Meeker*, 75 id. 260; *McCarty* v. *Kearnan*, 86 id. 291; *Pickerell* v. *Morss*, 97 id. 220; *Perry* v. *Pearson*, 135 id. 218; *English* v. *Porter*, 109 id. 285; *Guild* v. *Hull*, 127 id. 534; *Guild* v. *Warne*, 149 id. 105; *Burt* v. *Quisenberry*, 132 id. 395.

The burden of proving the insanity of the grantor, or undue influence of the grantee over him, is upon the complainant. *Lilly* v. *Wagoner*, 27 Ill. 395; *Willemin* v. *Dunn*, 93 id. 511; *English* v. *Porter*, 109 id. 288.

Influence, to render a conveyance inoperative, must be of such a nature as to deprive the grantor of his free agency. 1 Redfield on Wills, 522; *Dickie* v. *Carter*, 42 Ill. 376; *Yoe* v. *McCord*, 74 id. 44; *Brownfield* v. *Brownfield*, 43 id. 153; *Roe* v. *Taylor*, 45 id. 491; *Burt* v. *Quisenberry*, 132 id. 399.

Mr. JUSTICE CRAIG delivered the opinion of the court:

While it is true that when the deeds were executed Patrick Murphy was advanced in years and was somewhat feeble in body, and perhaps his mind was not as bright and vigorous as it had been in former years, yet we do not find in the record any satisfactory evidence that he was of unsound mind, or incapable of transacting business such as disposing of property by deeds of conveyance. It appears from the evidence that on the evening of October 11, 1893, he made up his mind to send for some person to prepare deeds. On the next morning he sent the defendant Thomas Murphy to LaSalle for one Haskins, an attorney, to prepare the papers. The attorney came and prepared the deeds as he was directed by Patrick Murphy. They were read over but not then executed. Haskins, in his testimony in regard to the mental capacity of Murphy, testified: "In my judgment his condition mentally was just as sound as any man I ever met." Two days after the deeds were written they were executed, and acknowledged before a justice of the peace. John Meara, who was present when the deeds were executed, testified: "I think Patrick Murphy understood the nature of the business he was engaged in at the time he signed the deeds." Andrew Whalen, a neighbor, testified that Murphy was able to transact ordinary business. A number of other witnesses corroborate the testimony of those we have referred to. Indeed, we find

no evidence in the record which would justify the jury or the court to find that Patrick Murphy, at the time the deeds were executed, was of unsound mind or incapable of transacting the business of disposing of his property. The fact that the mind may have been somewhat impaired by age or disease will not justify a court in setting aside a contract or a deed. It is ordinarily enough that the contracting party has sufficient mental capacity to properly understand and comprehend the nature, character and scope of the business which he undertakes to transact.

In regard to the charge in the bill of undue influence but little need be said. Undue influence, to render a deed void, must be of a character to deprive the grantor of free agency. (1 Redfield on Wills, 522; *Dickie* v. *Carter*, 42 Ill. 376; *Yoe* v. *McCord*, 74 id. 44; *Brownfield* v. *Brownfield*, 43 id. 153; *Roe* v. *Taylor*, 45 id. 491; *Burt* v. *Quisenberry*, 132 id. 399.) Nothing of that kind appears here. When the deeds were written by the attorney Thomas Murphy was not present and no directions were given or suggestions made by him. Indeed, we find no evidence in the record that Thomas Murphy importuned his father to execute the deeds, or that the father was controlled by him or any other person. On the other hand, so far as appears the execution of the deeds was the deliberate act of Patrick Murphy.

But it is claimed that the deeds were not delivered by Patrick Murphy, and hence they were invalid. Whether there was a delivery of the deeds depends upon what occurred at the time they were acknowledged, on the 14th day of October, 1893. After the deeds were written, two days before, Patrick Murphy informed Haskins, the attorney, that he did not intend to sign them that day. The question of delivery was, however, discussed. Haskins testified: "When we were talking about the signing of the deed he commenced to ask me questions about what he would have to do with the deeds after they were signed.

I believe I said to him, first, that if the deeds were not signed and delivered in his lifetime to the parties to whom they were made, or to somebody for them, they would not be good.  Then he asked me about it, and I explained to him that it was essential to the delivery of a deed that it be signed and delivered during the lifetime of the party,—either to the parties named as grantees in the deed or somebody for them,—and the persons to whom they were delivered, if not to the grantees, would have to have the absolute control over them and he would have to lose the right to recall the deeds—lose all further control over them.  I explained that to him fully, and then he said when he signed the deeds he would deliver them to somebody—he didn't want to give them directly to the heirs.  I suggested to him about making the deeds and reserving a life estate to himself, and then he could deliver them to the parties.  He said no; that he wanted it as it was there; that suited him better; that he would deliver the deeds to somebody that would be all right, for the parties to whom the property was to go."

On the morning of October 14,—two days after Haskins had given directions in regard to the delivery of the deeds,—Mrs. Meara had a conversation with Patrick Murphy and his son Thomas.  She testified: "We were talking about sickness and dying, and I says to Mr. Murphy that I didn't think he was going to live very long and I didn't think he was going to die very soon, and I thought he never would get over it, and Mr. Murphy says, 'I have lived longer than anybody that belonged to me.'  I don't know what else was said, and then Mr. Murphy says to Tom, he says, 'I will sign the deeds if you will promise to leave them in the hands of John Meara until after I die,' and Tom says, 'I don't care who has them,' then he says, 'Go for Hickok.'"  After this conversation Murphy sent for his friend Meara, and he and the justice of the peace, Hickok, arrived at the same time.  Hickok testified as follows: "I acknowledged these deeds October

14, 1893. He said he had been having some business done by a lawyer from LaSalle, and he had to watch the lawyers a little, and he wanted me to look the papers over. I read them to Mr. Murphy. He said, 'That is all right.' He undertook to sign them with a pen but could not make much of a fist at it, and then he signed them by his mark. I acknowledged them and placed them on the table. John Meara came up to the table, and Murphy said, 'John, you take those papers and keep them until I am gone and give them to the ones they belong to.' Meara said, 'I will see that they are kept safely.'" There was other evidence in corroboration of Hickok, but it will not be necessary to repeat it here. Meara took the deeds and retained them in his possession until the death of Patrick Murphy.

When the deeds were placed in the hands of Meara, Patrick Murphy, the grantor, reserved to himself no right to recall or revoke the deeds during his life. On the other hand, the entire dominion and control of the deeds passed into the hands of Meara, who held them for the grantees therein named. Where a grantor executes deeds and places them in the hands of a third party to be held and delivered to the grantees, reserving no control whatever over the instruments, such facts constitute a valid delivery. (*Baker* v. *Baker*, 159 Ill. 394; *Miller* v. *Meers*, 155 id. 284.) In the *Baker case*, *supra*, where the facts in regard to a delivery were similar to the facts here, we said (p. 397): "In *Stone* v. *Duvall*, 77 Ill. 475, we held that the delivery of a deed for land to a third party, to be retained until the death of the grantor and then to be delivered to the grantee, is not an absolute delivery and will not operate to vest an immediate estate in the land, but it will be good to pass the title, at the grantor's death, to the grantee or his heirs. * * * In the case under consideration the grantor passed the deeds into the possession and absolute control of Joseph (the son). The grantor retained no control whatever over them, but

Joseph took and retained the entire control, and they never passed out of his possession until the death of the grantor, when he delivered them over to the respective grantees. Under the facts as they were proven we entertain no doubt in regard to the validity of the delivery of the deeds."

Counsel for appellants have criticised some of the instructions given for appellees. In a case of this character, where the verdict of the jury is merely advisory, if the decree rendered by the court is sustained by the evidence, as it is here, erroneous instructions would not be ground for reversing the decree.

Complaint is also made that the court erred in refusing to permit appellants to prove what Patrick Murphy said in reference to his property. It is a familiar rule that statements made by a grantor are inadmissible for the purpose of invalidating a deed. When a person has executed a deed he cannot invalidate it by any parol declarations he may make. (*Francis* v. *Wilkinson*, 147 Ill. 384; *Nicewander* v. *Nicewander*, 151 id. 156.) As the offered evidence could have no bearing except to invalidate the deeds it was properly excluded.

The decree of the circuit court will be affirmed.

*Decree affirmed.*