ANN MERIH HOWLS CHADD, Respondent, v. GEORGE MOSER and ELIZABETH S. MOSER, His Wife, Appellants.

No.1386. (71 Pac. 870.)

1. **Deed: Mental Capacity: Delusion: Evidence Insufficient to Show.**
   Evidence examined, and *held* insufficient to support a finding that a widow, seventy-six years old, in poor health and very much enfeebled, was induced to make a deed to her daughter and son-in-law because of a delusion she was laboring under respecting her duty to provide for their child.

2. **Same: Consideration.**
   The mere fact that an old woman who had deeded her home to her children on one occasion was dissatisfied with food furnished her when sick did not show a failure of consideration of the deed—to give her kind treatment, care, and attention.

3. **Same: Mental Capacity.**
   Evidence examined, and *held* insufficient to support a finding that a woman seventy-six years old, in poor health and much enfeebled, lacked mental capacity to execute a deed.

4. **Same: Presumption.**
   Want of capacity to contract will not be presumed because of old age or physical infirmities.

5. **Same: Undue Influence: Evidence Insufficient to Show.**
   Evidence examined, and *held* insufficient to support a finding that a widow seventy-six years old, in poor health and much enfeebled, had deeded her home to her daughter and son-in-law, in consideration of their caring for her, because of undue influence.

25 Utah—24.

**6. Same: Presumption.**
> Where a mother deeded her home to her child in consideration of
> care, attention, and assistance in the past, and support for the
> rest of her life, undue influence will not be presumed.

(Decided March 21, 1903.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. W. C. Hall,* Judge.

Action to cancel and set aside a deed. From a judgment
in favor of the plaintiff, the defendants appealed.

REVERSED.

*Messrs. Powers, Straup & Lippman* for appellants.

Slight evidence of undue influence is insufficient to
establish it. The influence must amount to force and coercion,
destroying free agency as to the very act and the exertion of
undue influence upon the very act must me proved. Estate
of Carpenter, 94 Cal. 406. See also the following cases
bearing on undue influence and incapacity: Ralston v. Tur-
pin, 129 U. S. 663; Baldwin v. Dunton, 40 Ill. 188; Beith
v. Beith, 76 Iowa 601; Oneil v. Oneil, 30 Minn. 33; Bowles
v. Walton, 54 Mo. 261; Wensell v. Rathjohn, 89 N. C. 377;
Millicon v. Millicon, 24 Tex. 426; Sullivan v. Hodgkin, 12
S. W. 773; Hall v. Mutual Life Ins. Co., 43 S. W. 194;
Martin v. Winton, 62 S. W. 180; Trimbo v. Trimbo, 47
Minn. 389; Litkins v. Litkins, 27 S. W. 531, 22 S. W. 895;
Carnagie v. Diven, 49 Pac. 891.

*Messrs. Smith & Putnam* for respondent.

STATEMENT OF FACTS.

Plaintiff brought this action January 4, 1901, to have
cancelled and set aside a deed of conveyance to certain real
estate situate and being in Salt Lake City, of the value of

$1,500. The facts, in substance, as disclosed by the record, are as follows: The defendant Mrs. Moser is the daughter of plaintiff, and Mr. Moser is her son-in-law. Mrs. Moser before her marriage had lived all her life with her mother, and after her marriage she and her husband continued to so live with plaintiff until about six years ago, when they moved into a rented house about three blocks from plaintiff's home. Plaintiff had but one other heir (a daughter, Mrs. Brough), who lived in another part of the State, and who had visited her mother but twice in twenty years prior to the commencement of the suit. At the time of the making of the deed, plaintiff was seventy-six years of age, in poor health, and very much enfeebled. She had no means other than the property in question, which had been sold by Salt Lake City for delinquent assessments, and she had no means with which to redeem it. For several years plaintiff had been unable to pay the taxes on the property, and defendants had given her money for that purpose, amounting in all to about $200. About a year before the transaction complained of, plaintiff spoke to defendants about deeding the property in question to them, in consideration that they take care of her, make her comfortable, and pay her $5 per month during her life; and on numerous occasions subsequent thereto, and before the making of the deed, she expressed a strong desire to dispose of her property to defendants on these terms. About six weeks before the deed was made, plaintiff was taken sick on the street, and carried to the home of defendants, where she was nursed and cared for by them until she recovered. A short time before the execution of the deed the plaintiff consulted an attorney of good standing, and informed him that her mother had appeared to her in a dream or vision and requested her to care for one of defendants' children—a little boy three years of age—and spoke of deeding a part of the property to this child; but came to no definite conclusion in regard to it. She also spoke to several other parties about

the dream or vision. Subsequently the plaintiff returned to the office of the attorney in company with defendants, and, after considerable discussion, plaintiff decided to deed the property in question to the defendants, which was done, the attorney representing and advising the plaintiff in the transaction. The attorney showed a decided interest in plaintiff's welfare, and advised her to dispose of her property by will, and not by deed. The defendants wanted a deed or nothing. The child above referred to did not directly or indirectly enter into the transaction. The consideration expressed in the deed was $200. On receiving the deed, defendants paid the back assessments for which the property had been sold, amounting to $63.65, and soon thereafter went into possession, and made valuable and permanent improvements on the same at a cost of about $100, and have since paid taxes thereon aggregating $90.75. At the time of making the deed, and as a part of the consideration thereof, defendants executed and delivered to plaintiff a lease, which, in substance, provided that "defendants leased to plaintiff one room in the building and on the premises heretofore conveyed by said deed for her and during the natural life of said plaintiff, and agreed to keep the said room in good repair and comfortable and suitable for plaintiff to live in and to pay to her $5 per month during her natural life, and at her death to properly and respectably bury her; to pay all funeral expenses and expenses of her last sickness." The record shows that defendants, in every respect, complied with the provisions of the lease. They provided plaintiff with a comfortable room, and paid the monthly installments, and furnished her fuel and with provisions for her table. There was some evidence of ill treatment, which consisted more of personal indifference of Mrs. Moser towards her mother, than of acts of violence or offensive conduct, or failure to provide her with the comforts or necessaries of life. This testimony of ill treatment, however, was vigorously denied by the defendants.

The court made its findings of fact, which, so far as material in this case, are as follows: "(7) That in the summer of the year 1898 plaintiff was taken suddenly ill on the streets of Salt Lake City, so that she was wholly unable to move or help herself in any way, and she was then taken by defendants to their home, and remained with them, in a sick and suffering condition, for about six weeks, part of the time in bed, and during a portion of the remainder of the time unable to move about, except on crutches. (8) That during the period of plaintiff's said illness defendant Elizabeth S. Moser waited upon her assiduously, giving her great and constant attention, both in person and by her children and the grandchildren of plaintiff. (9) That about or shortly prior to the time of said illness plaintiff believed she saw in a vision or dream her mother, then long dead, standing holding a little child of defendants, about three years of age, by the hand, and saying to plaintiff, 'Take care of this child;' that said vision made a deep impression on plaintiff's mind, and caused her to take a special interest in said child, and to be very fond of him, and to be impressed with the belief that it was the wish of her dead mother that she provide for said child by giving him a portion of her property, and that it was her duty to carry out said wish; that plaintiff's belief and her peculiar feeling about said child and about her duty towards him was known to defendants." The tenth finding is, in substance, as follows: That during the time of her illness plaintiff was in a greatly enfeebled condition, both of body and mind; that the defendant Elizabeth S. Moser caused said child constantly to suggest and solicit plaintiff to take defendants and their family to live with her on her property; that during and subsequent to plaintiff's said illness defendant frequently suggested to plaintiff that she could provide for said child by deeding her property to them, and promised, if she would do so, to come and live with her upon the same, and to care for, nurse, and attend her with

kindness and consideration during the remainder of her life-time; and that in consequence of plaintiff's feelings about said child, and belief as to her duty towards him, plaintiff's mind, in its enfeebled state, became imbued with the idea that she could perform her duty to said child, and at the same time secure nursing, care, and attention for herself during the remainder of her life, by conveying her property hereinbefore described to the defendants. "(12) That plaintiff's mind at the time of the execution of said deed was not in a condition where she was competent to contract with said defendants with reference to said property, by reason of the delusion she was laboring under with regard to her duty towards their said child, and that plaintiff would not have made said deed to defendants, had it not been for said delusion." "(18) That plaintiff did not execute said deed of her own free will and volition, and in a competent and sound condition of mind, but under the influence of said delusion and improper and undue influence and coercion of said defendants, exercised upon her enfeebled mental and physical condition aforesaid, and would not have executed the same but for the facts and circumstances aforesaid." Defendants excepted to findings 9, 10, 12, and 18. The court entered judgment cancelling and setting aside the deed in question. Defendants appeal.

McCARTY, J., after stating the facts, delivered the opinion of the court.

We have made a thorough and critical examination of the record in this case, and fail to find any evidence that even tends to support the findings that plaintiff was induced to make the deed because of some delusion she was laboring under respecting her duty to her little three-year-old grandchild. In fact, the record affirmatively shows the contrary to be the case. Plaintiff testified on this point as follows: "I did not think about conveying my land, or any part of

it, to the child.   The thought never came to my mind after
this occurence I have mentioned, and before this day that
I went to Lewis' office the thought did not come into my mind
about giving part of my land to this child."   And again she
·says:   "I did not say anything to Mr. Lewis, whether I
would give part of my land to this child.   No more was men-
tioned of the child."   True, the record shows that on several
occasions the little boy came into plaintiff's room and asked
her if he could come and live with her, but the record does
not disclose a single fact or circumstance that even suggests
it was anything more than the innocent prattle of the child.
It is evident that the plaintiff so regarded it, as shown by her
testimony on this point, which is as follows:   "That circum-
stance did not influence me to pay particular attention to
the child and to have him in my mind.   This incident—the
child coming in and talking to me—did not influence me to
think more of the child.   I never thought anything about it.
There was no circumstance that caused me to think particu-
larly about the child, or care for him."

Counsel both for plaintiff and defendants have devoted
much space in their briefs to the discussion of the question
as to when and under what circumstances a party may and
may not avoid a contract entered into while laboring under a
delusion; but, as the record shows affirmatively and conclu-
sively that plaintiff was not induced or in any way influenced
to execute the deed in question because of any delusion or
aberration of the mind on her part, it is unnecessary for us
to either discuss or express an opinion on this subject.

Respondent contends, and the court, in effect, found, that
there was a failure of consideration on the part of the de-
fendants, because of their neglect to give plaintiff the
kind treatment, care, and attention they promised before
and at the time the deed was executed.   It is conceded
that defendants have complied with and performed every
obligation required of them by the provisions of the lease that

was made and executed at the time of the delivery of the deed. Plaintiff testified that, when she was sick and unable to care for herself and do her own cooking, her daughter Mrs. Moser provided her with food; and she only refers to one instance wherein she was dissatisfied with what was furnished her, and that was a piece of meat that was not to her liking. We think the testimony wholly insufficient to sustain a finding of failure of consideration.

The controlling questions, and those that are decisive of this case, are, first, did the plaintiff, at the time she made the deed, have the mental capacity to act and to understand and appreciate what she was doing? and, second, was she unduly influenced to such an extent that her free agency was destroyed?

The record shows conclusively that, at the time the deed was made, plaintiff was in possession and in full control of her mental faculties. She knew and understood what she was doing, and was in every respect competent to act for herself. She had the advice and assistance of a competent and reliable attorney, who took pains to explain to her what the legal effect of the act of deeding away her property would be. The attorney was called, and, in part, testified, as follows: "I informed Mrs. Chadd, and she was well acquainted with the contents of the deed before she signed it. There is not any question or mistake about that fact. In that interview she seemed to understand what was said and what was done there. . . . She seemed to be posted, and her faculties were sufficient to understand what was going on and what took place." John Clark, who at the time was mayor of Salt Lake City, testified that he had known plaintiff for many years, and that the parties called to see him on the day and after the deed was made, and that, in talking about the transaction, plaintiff "was rational, and comprehended things that were said and done, and was capable of understanding them; that she took part in the conversation

in a very rational and satisfactory manner; and that she appeared to understand all that had been done and said. There was nothing at all about her in any way that was unusual or out of the ordinary." Some six or seven other witnesses testified to facts showing plaintiff's capacity to act for herself. In fact, there is no evidence whatever to the contrary, except the sweeping statement of plaintiff, made at the trial, that she was "crazy" and did not know what she was doing. The only evidence introduced that tends to support the contention of want of capacity on the part of plaintiff is that she was aged, in ill health, and very much enfeebled. But want of capacity to contract will not be presumed because of old age or physical infirmities. Delaplain v. Grubb (W. Va.), 30 S. E. 201, 67 Am. St. Rep. 788; Dickerson v. Evans, 84 Ill. 451; Orr v. Pennington, 93 Va. 268, 24 S. E. 928; Sullivan v. Hodgkin (Ky.), 12 S. W. 773; Crowe v. Peters, 63 Mo. 429; Shea v. Murphy, 164 Ill. 614, 45 N. E. 1021, 56 Am. St. Rep. 215; Davis v. Latta (Iowa), 62 N. W. 17.

It appears from the record that the plaintiff, about a year before the deed was made, spoke to the defendants about deeding the property to them, and subsequently, on several occasions, again mentioned the matter; but there is not a scintilla of evidence that either of the defendants ever mentioned the matter to her until the day on which the deed was executed. After they arrived at the office of the attorney who prepared the deed, there was some discussion as to whether the plaintiff should dispose of the property by will or by deed. Plaintiff was in favor of making a will, but the defendants refused to advance any more money to protect the property and improve it and help the plaintiff unless the conveyance was by deed, which they had a perfect right to do. No matter what moral obligations they were under to take care of plaintiff and protect her property, it must be conceded that they were under no legal obligation to

Chadd v. Moser.

do so. The plaintiff finally, in opposition to the advice of her attorney, decided to make a deed, which was done. Defendant Mrs. Moser, with the exception of about five years, had lived all her life with her mother, and had raised a large family under the same roof, and had recently cared for and nursed her through a severe spell of sickness. Defendants had for several years given plaintiff money to pay the taxes assessed against the property. The property had been sold for assessments made for the extension of water mains, and more taxes, amounting to $31.50, would soon be due, which plaintiff was unable to pay. In addition to the care, attention, and assistance thus extended, the defendants, by the provisions of the lease, were obligated to continue to assist and provide for plaintiff during the rest of her life. Under these circumstances, coercion and undue influence will not be inferred.

6    While courts of equity will carefully scrutinize transactions of this character, when entered into between parent and child, yet when, as in this case, as shown by the record, no undue influence has been used, such contracts will not be disturbed, provided the complaining party at the time of the transaction had legal and mental capacity to contract.

We are of the opinion, and so hold, that findings Nos. 9, 10, 12, and 18 are not supported by the evidence. The case is reversed, with directions to the trial court to set aside the decree entered in the case, and to dismiss the action.

BASKIN, C. J., and BARTCH, J., concur.