LILLY HINTZ

*v.*

ADOLPH G. HINTZ.

*Opinion filed June 14, 1906—Rehearing denied October 11, 1906.*

1. DURESS—*grantor must have been under fear at time the deed was executed.* To justify setting aside a deed upon the ground of duress, the grantor must at the time of its execution have been in such fear of her life, or of bodily harm in case of refusal, as to so affect her mind that the execution of the deed cannot be said to be her voluntary act.

2. SAME—*when deed will not be set aside for duress.* A deed from wife to husband will not be set aside upon the ground of duress even though prior to its execution the parties had quarreled and the husband had struck the wife and used violent language to her, where the wife afterwards went alone and of her own accord to a notary public, where, after talking with him, she executed the deed which conveyed to the husband the half interest to which he had a just claim.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Appellant, Lilly Hintz, filed her bill for divorce in the superior court of Cook county against her husband, the appellee, Adolph G. Hintz, on the ground of extreme and repeated cruelty. She also alleged that on November 21, 1899,

she executed a deed of conveyance for a fifty-foot lot on Evanston avenue, in the city of Chicago, to her daughter, Lilly Arndt, and the appellee, and that the execution of said deed was procured by duress, fraud and undue influence, was never delivered and subsequently was destroyed; also, that appellee had filed a bill for partition of said real estate claiming an interest in the same under said deed, and that the proceedings and claim of title by appellee constituted a cloud upon her title, which she asked to have removed.

Appellee answered the bill, denying the allegations of cruelty, and alleging, in substance, that he was the equitable owner entitled to a one-half interest in the real estate mentioned in the bill by virtue of an agreement entered into between himself and the appellant, by which they were to work together in the improvement of appellant's property and were to share the proceeds equally, and that the property involved in this suit was the result of their joint efforts in pursuance of said agreement.

The divorce issue was tried before Judge Brentano and a jury, and a verdict was rendered finding the appellee guilty of extreme and repeated cruelty, as alleged in the bill. A decree of divorce was rendered accordingly, and the court retained jurisdiction to hear and determine the property rights between the parties. Subsequently the appellee filed a cross-bill, alleging substantially the same facts set forth in his answer to the original bill, claiming a half interest in the premises by virtue of said agreement; also, that the deed mentioned in the original bill was executed in confirmation of his rights under said agreement, and praying for a partition and division of the premises. Lilly Arndt, the daughter of appellant, was made a party and filed a disclaimer to any interest in the property by virtue of the deed, adopted the answer filed by her mother to the cross-bill, and asked that the premises be restored to her mother.

Upon the bill, cross-bill and answers, before Judge Joseph E. Gary, on November 27, 1905, a decree was rendered,

which found that during all of the transactions and business connections in making various improvements and managing the property standing in the wife's name, the appellant and appellee advised and consulted with each other, and that the premises described were the result of their joint efforts, money, enterprise and industry; that appellee constructed buildings for other parties when not employed in the common enterprise, and earned money which he devoted to the payment of bills in the various improvements of the property owned by himself and wife, and also to the support of his family. The decree further found that they were owners, as tenants in common, of the premises in question, and that the deed executed by appellant to appellee and her daughter was not obtained by fraud and duress, without consideration, but was executed and delivered by appellant as her free and voluntary act and with full knowledge of its purport and legal effect, and that it was her intention and will to deliver said deed, which constituted a good conveyance, to appellee. To reverse this decree an appeal has been prosecuted to this court.

R. WILSON MORE, (LYMAN, BUSBY & LYMAN, of counsel,) for appellant.

A. C. NOBLE, (QUIN O'BRIEN, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

No question is here raised as to the proceeding for divorce. Many errors are assigned on the decree settling the property rights between the parties, but the only one insisted upon is, that the decree is not sustained by the law and the evidence. Our inquiry, in this condition of the record, must be whether the facts proved are sufficient, under the law, to entitle appellee to the relief granted him.

The record is voluminous, containing the evidence both on the bill for divorce and the cross-bill of appellee. We

will consider only such parts of it as in our opinion are necessary and proper in the decision of the foregoing question. It shows that appellant is of German descent and has been twice married. She lived with her first husband eleven years. Upon his death he left her some insurance money, which she invested in a piece of property on Baxter street, in the city of Chicago. After remaining a widow seven years she married appellee. At the time of this marriage she owned the property on Baxter street, which was of the value of $2000, subject to an encumbrance of about $500. Appellee had about $580 in money and owned some land in South Dakota, which he subsequently sold for $300. He was a carpenter by trade, and also drew plans, as an architect, for the construction of buildings. After the marriage the property on Baxter street was improved by their joint efforts and sold, both joining in the conveyance. They then bought and improved various other pieces of real estate, until that on Evanston avenue, now in controversy, was purchased. It was of the probable value of $6250, and soon after the purchase was improved by the erection of a three-story brick and stone flat-building of six apartments, and a six-room cottage in the rear. In the improvement of the various pieces of property owned by the parties after their marriage the appellee drew the plans and specifications, superintended the work and at times worked himself. He drew the plans and specifications for the improvement on the Evanston avenue lot and assisted in making arrangements for a loan of $12,500 for the erection of the building. All of the deeds to the various pieces of property had been taken in the name of appellant. Appellee sold his South Dakota land, ·and claims he put the money derived from it, together with the cash which he had at the time of his marriage, into the various pieces of property acquired. There was no serious disagreement, controversy or trouble between the parties until the time the Evanston property was about half completed, when a controversy arose as to the share or interest of appellee

in that property. He claimed to be a tenant in common with his wife, which claim was disputed by her. A question arose with those who were to loan the money, with reference to certain liens or claims upon the property and the building certificate issued by appellee. These parties sent for appellant and informed her that if a change was not made they would loan no more money. On her return home a quarrel arose between her and her husband about his claim to an interest in the property. He informed her he would not do anything more towards superintending the building and would perform no work himself until his right was recognized by her in the form of a deed or some other conveyance. This demand brought on a personal encounter, in which she claims he knocked her down, used violent language towards her, seized her by the wrists and twisted them until they bled, and otherwise cruelly treated her. Immediately afterwards she went to the office of a notary public near by, and after some conversation with him executed the deed above mentioned, conveying one-half of the premises to her husband and the other half to her daughter. She returned to the house and gave the deed to him, and he placed it in a drawer with other papers belonging to him. The execution of the deed did not, however, bring about a reconciliation, and they continued to disagree and quarrel with each other, even engaging at times in personal encounters. In about six weeks the appellant went to the drawer where the deed had been placed and took possession of and destroyed it. The husband subsequently filed a bill for partition, which was dismissed, and then appellant commenced the present suit.

The only question for determination is whether these facts are sufficient to entitle appellant to the relief prayed. The allegation of her bill is that the execution of the deed was procured by duress, fraud and undue influence. The undue influence which will justify the setting aside of a deed must be of such a character as to deprive the grantor of free agency. (*Shea* v. *Murphy,* 164 Ill. 614.) To justify the

setting aside of a deed on the ground of duress the grantor must at the time of its execution have been in such fear of his or her life or of bodily harm in case of refusal, as to so affect the mind that the execution of the deed was not his voluntary act. (*Hagan* v. *Waldo,* 168 Ill. 646.) Mere vexation, annoyance and threats of personal injury, or of imprisonment for which there is no ground, or threats of criminal prosecution, do not constitute duress, where no proceeding has been commenced and no warrant issued. We have held that showing the grantor a pistol, and slapping him, to induce him to sign a deed, which acts took place some time before the actual signing, did not constitute duress, where it appeared the grantor did not conclude to sign the instrument until after deliberation and taking advice. (*Rendleman* v. *Rendleman,* 156 Ill. 568.) Under these rules of law it is clear the evidence in this record does not sustain the allegations of complainant's bill. It cannot be denied that at the time of the marriage the husband had almost as much property as the wife. After that they made considerable money by buying, trading, selling and improving property. He assisted in this work, and was probably entitled to as much credit for the success as she was. During that time they had apparently no serious controversies, disputes or personal encounters. Under such circumstances it would appear to be but equitable and just that he should share in the property so acquired, and this right seems to have been recognized by the wife in executing and delivering the deed to him. Suspicion arose in his mind that she was not intending to treat him fairly, culminating in a quarrel and personal violence to her shortly before the deed was executed. His conduct at that time was reprehensible, and he was certainly guilty of acts. and the use of language which cannot be too strongly condemned, but.the record is silent as to any act of fraud or coercion on his part at the time of the execution of the instrument or its delivery. The duress and undue influence complained of consisted in threats which he is alleged to

have made against her, and acts of violence, together with the use of indecent and obscene language in her presence, prior to the execution of the deed, at which time it is admitted she went of her own accord to the notary public and told him what she wanted to do. Appellee was not present at the time, and in fact it does not appear from the evidence that he even knew she intended to execute the deed. The threats, abuse and assaults were not to compel her to make the conveyance, and in law did not amount to duress or undue influence. She was *sui juris,* possessed of all her natural faculties and acted voluntarily, being in no way compelled to make the conveyance. She could have abandoned him on account of his cruel treatment, and in her bill for divorce, by proper allegations, obtained a decree for alimony. Instead of pursuing that course she voluntarily made the deed and must abide the consequences. She may have acted unwisely,— perhaps did; but courts cannot arbitrarily grant relief against acts of indiscretion and folly.

We are unable, after a painstaking consideration of the voluminous evidence in this record, to say that the chancellor committed error in his decree, and the same will accordingly be affirmed.

*Decree affirmed.*